The next matter, number 152457, Michelle Audette v. Plymouth, MA Good morning, Judge. Oh, good afternoon. Sorry. May it please the Court, Attorney Tim Burke here representing Michelle Audette. This case is an appeal from the Allowance of a Motion, a summary judgment involving my client, Michelle Audette, who is a police officer, as you well know, for over 30 years in the town of Plymouth. She had no prior disciplinary history. She was injured in January of 2011. And following that injury, she went on a number of, there was repeated physical attempts for therapy. She followed through with each and every one of those incidents and requirements. And in April of 2012, she was sent to, she was allowed to return in the light-duty capacity as what they refer to as the station officer within the police department. And what the department is saying here is that we have a single opportunity for light-duty status. And they use that as their only, the sole basis for providing an accommodation to her. And obviously, she was there on a limited basis. She could only, at that time, only work four hours a day. She was required not to be able to lift more than, I think, three pounds. And as a consequence of this, her recovery was slowed. That goes on for an extended period of time. And in June, she then had surgery, June of 2013. She had surgery and returns in October. Now the issue here is, what the defendants are saying, and what the court found below, is that she allegedly was not able to perform the essential functions of the police officer. And it was clear that she was allowed to come back on a light-duty basis and was able to perform the station officer responsibilities. The request was made for her to go on to this NIDILRRS data entry program, which is a great deal more sedentary. And that was one of the things that we suggest, because she was not allowed to go on to the NIDILRRS program, that delayed her recovery. The elements of reasonable accommodation, and what the defense is saying, is that a police officer who is unable, and they cite the Santos case, that the police officer who is unable to perform all of the essential functions is essentially incapacitated from work. And it needs to, at that point in time, no reasonable accommodation has to be made, because they don't qualify as a person able to perform the essential functions. Counsel, it's not just the essential duties of the police officer, and she had a particular status. She was a patrol officer, isn't that correct? It is, yes, Your Honor. And isn't it a fact that there are, in this department, there were no patrol officers who performed permanently the kind of work that she wanted to perform, that would have a job that was completely sedentary, would be record-keeping only. And I think it's the city's position that they would have had to create a new patrol officer position. She retained that status as a patrol. They would have to create an entirely new patrol officer position in order to accommodate her requests. Isn't that the most specific? No, Judge. I think that's what their contention is. But, Judge, what they're missing and what the record reflects, if you look at the two letters from Dr. Winnick, she was sent to see Dr. Winnick in 2012 and 2014, and there's a letter sent to Winnick by the chief, and he says, is she permanently incapacitated? Is she able to perform the functions of a police officer in the future? And Dr. Winnick, and this is the only fitness for duty test that was conducted, or those two rather, and he came back in both instances, and it's at the record appendix on 548 and 581, he says he can't predict with certainty that when or if she'll be able to return, but she is able to perform the functions. And significantly, he says that she has not reached an end medical recovery point. And if you understand how the process works, when a police officer, state police and municipal police officer is hurt, whether it's a cruiser accident or shot or some kind of confrontation with an arrestee, and they're injured, they're put on an IOD. When they get returned and are allowed to come back on a limited basis, there's the request for the accommodation, but here there has never been the determination that this is a permanent disabling injury that's going to disqualify her forever. And the other legal process that's required here, and how Santos differs, is that in Santos he was terminated. It was determined that he was permanently incapacitated and could not in the future perform those functions. Had the department here actually gone forward with an involuntary retirement and attempted to involuntarily retire her based on medical information, we'd be in a different position, because it would be demonstrated that she could no longer, there was at least medical evidence to show that there was no future recovery possible. The two requests that they had her evaluated in 2012 and 2014 say just the opposite. She can still work, she can still perform, and she can do so on a limited basis, and she's now working six hours a day. But the difference here is that there was no... She cannot work and she cannot perform the duties of a patrol officer. Isn't that correct? There is no way in which the department could know that she would ever be able to do that. There is uncertainty. She has not reached an end point, but there certainly was uncertainty as to whether she would ever be able to... But the issue is, Judge, that there has to be determination that she's permanent. She couldn't retire unless there is a permanent disability. It's just the opposite. They've attempted to find out whether or not there's a permanent disability. The doctors have said, no, it's not determined now. She can reach, and we haven't reached a medical end result for her. She should be allowed to continue to work. If you look at the timetable... Excuse me, is she working right now? Yes, Judge. Getting full pay? Yes. So I don't understand, what is the revenue you're seeking? Well, Judge, first of all, she's been trying to recover. And look at the record. This is somebody who was committed to her employment. It would be the easiest thing in the world for her just to walk away from the job. She likes what she does. I understand all that. And she's come back. And the history of why the Chief has refused to give her the accommodation that she requested and which is supported by the medical evidence is because, during this time period, he's imposed this discipline on her that's different from what other officers have received. If you look at the timetable, the incident that she's investigated for is in December of 2011. She comes back April 8, 2012. She's placed on light duty. She goes in and asks for an accommodation. The accommodation she wants is to be put in this particular job. Now, until she is fully recovered, which the medical evidence indicates that there is certainly a likelihood that that could happen, and she's entitled to do that under the eye and the leaf statute and in terms of the collective bargaining agreement, there's no limitation put in either the statutory language or the collective bargaining agreement that limits the amount of time that this person can be carried. She's not asking for a permanent position. What she's asking for is a reasonable accommodation that's consistent with the benefit of her recovery. What do you need to do to make clear that you're asking for a reasonable accommodation as opposed to something you'd like? It's consistent with what the doctors have said, that she has to have limited mobility, that she would benefit from having this. Where is the evidence in the record that she informed the employer that the current accommodation she had was not tolerable, such that she had to be given this other thing in order to comply with the statute? In October of 2000, after her surgery, so you have another denotation, she has the surgery in June. She comes back in October. And it's October 6 is when Dexter, the male, who's doing NIDILRR's daily entry, he's removed from that position on October 6th. And October 9th, she asks the chief, she says, I would like to do the same thing that the male officer was doing. How is that a request for a reasonable accommodation, that if it was denied? Because he refused to do it, Judge. I guess that's what I'm asking. You have a situation, you have an employee who can't do all of the activities. Right. An accommodation is made that's still ongoing to that employee. Right. Then the employee says to the chief, well, there's this other thing that looks like I would like to do. That's denied. I guess the answer, Judge, is it's an interactive exchange. It's not simply uniform response. It's not up to the chief himself. I mean, we have to decide, for you to win, we have to decide that her current job is not one that she can, even with the accommodation, is one that she can't do? I'm just not following what you're saying. She can't do it if she's doing this job. It's not a permanent job. So why does she need an accommodation within the meaning of the statute? Well, she needs an accommodation that's consistent with what her males have received. That's a gender discrimination claim. It is. So I'm talking about the ADA claim. But it's all ñ well, I guess your interpretation would be it's reasonable in the requirement of an interactive exchange. And given her medical history, and given the fact that there was a need for her to have a sedentary time period, you know, for her to increase her recovery, I guess the question is whether or not it's reasonable for him to have just denied it carte blanche. And there was never any consideration in October, even of any discussion between the chief and Rogers, as did any other alternative. And she did request the Bissonnibus program, which was no sedentary. And that was refused without even any discussion of it. But that's not the reasonable ñ that's not the interactive ñ But she's not arguing that she can't do the job that she now has. No, Judge, she's not arguing that at all. She's able to do that job, but it's not that the interactive process doesn't end, and it's not just a simple one-dimensional duty. The light duty that was provided was only in the form of the station officer. There were other responsibilities. There were other light duties in that 2009 memo that listed other light duty opportunities that they could have pursued. Those were never even discussed, and there is a requirement that those be discussed for the purpose of seeing whether or not it's a reasonable combination. And the EEOC requires it to be individualized, not just simply the only thing that's available for you is what you can do or what we have as a station officer. Thank you. Mr. Ouellette. Thank you, Your Honors. I think the main argument that we have was addressed to the court by ñ which is that the plaintiff is not a qualified handicapped individual, and therefore each of her handicapped discrimination claims under each of the statutes she cites fails. She cannot perform the essential functions of her job as a patrolman with or without a reasonable accommodation. The job of patrolman involves patrolling, providing emergency services, apprehending criminals, and she is unable to perform that job. She does not dispute that she is unable to perform that job. The fact that she has been only working in the position of station officer, which is basically the person who works at the front desk behind the plexiglass of the station. I was going to ask, is there a description anywhere in the record of the job description of what a station officer does? I believe there is, but I know the Chief testified to it to a great extent, which is essentially you work behind the front desk, you perform administrative tasks, you deal with individuals who come in, members of the public who have questions, you also perform fingerprinting, assist to some extent with booking, and perform self-checks of prisoners. The plaintiff, however, is performing the position of station officer in a light-duty capacity. So basically it's a somewhat light-duty position, but in a further light-duty capacity. She is not required to get up, walk down, and perform self-checks or have any face-to-face interactions with members of the public, such as performing fingerprinting, or anything basically outside the plexiglass area. So she has been working in the station officer position in a light-duty capacity now for four years. Is she doing that full-time? No, she has not worked a full eight-hour day since her January 2012 interview. And is that because she would have addressed that to a person else? Does she now want a position that would allow her to return full-time? No, she does not. No, certainly not. No, she has requested to work part-time, and the department has allowed her to do that, and she has provided medical documentation that she, because of her injury that requires her to be on light-duty, that she can only work, at some points it's been four hours per day, at some points it's been six hours per day. But no, she's certainly not seeking to work full-time. She is paid full-time. She is paid for the full eight-hour shift, even though she works only four to six hours. She's also been permitted to attend physical therapy sessions during that four hours that she works and not make up the time. So what does she want that she's not already getting? She's got a job that seems to accommodate her physical limitations at the present time. She's getting paid full-time. She's given time for physical therapy. What is your understanding of what she wants? Just to take one slight step back, the fact that she has not been able to work, I think, more than a four- or six-hour day in the last four years also goes to the point that she cannot perform the essential functions of a police officer. But what she has been given, she's been given 19 months of paid leave. She works four- or six-hour days. She's paid for eight. She's allowed to attend physical therapy during that four- or six-hour day and not make up the time. The fact that she was the first police officer, I believe in the history of the Plymouth Police Department, to be allowed to work part-time, at least the first within Chief Pateri's tenure, which goes back six years. So that's a unique accommodation. She's been allowed to work in a light-duty capacity for more than four years, which, based on the record we have, is the longest time period that anyone in the Plymouth Police Department has ever been allowed to work in a light-duty capacity. She was also given a parking space that made it easier for her to get in the building, shorter walk, an elevator key, which is not accessible to other patrol officers. So she has been given multiple, multiple extraordinary and, in many cases, unique accommodations. What does she want? My understanding of what she's asking for is that she would like to only perform the clerical duties of, basically, the NIBRS clerk, who is a civilian clerk who has worked at least some period of time over the last four years for the department. It's not a police officer, it's a civilian, and they input NIBRS data. NIBRS is basically record-keeping for the federal government on crime statistics. It's something the department is required to do. It's done by a civilian clerk, and it's overseen by the records sergeant for the department. She is essentially asking the department to create and fund a position where a police officer would do that full-time. And it is clear that the department has no obligation to do that. They have an obligation to provide a reasonable accommodation. They've done so, and I think it's blacked by the law that a reasonable accommodation does not require... So your understanding of the appeal of that for her is that it requires less walking? I believe so. I don't know that there's any demonstration from the record that it actually does require less walking, substantially less walking, than the stationary walking. You understand that's her understanding. Yes. And that's why she would like it. Yes. And there's... We're on summary judgment here, or is this 12B6? I forget. Oh, we succeed with summary judgment. So in terms of what the record shows, you contend that there's just nothing in the record that shows the amount of walking she now needs to do is something that there's any medical reason to believe she can't do? There's no question that she's able to perform the functions of the station officer position that she's been performing for the last four years... And she makes no allegation that if she doesn't get this accommodation, she'd have to leave? No, Your Honor. No, in fact, if you look at... Before she made the request, she sent a letter in for her return asking if she could perform NIDRRS rather than the station officer duty. And I just stated that the 40 other patrolmen who have been on that duty since the chief has been police, the chief has been the chief of police in the last six years, and every single one of them, with the exception of Ben Dexter, who did NIDRRS work for four months, has worked in the station officer position. So you don't need to... On this view, we don't need to raise the issue of whether qualified individuals can or cannot see reasonable accommodations and what's a qualified individual, because we can assume all of that and still say there's just no request for a reasonable accommodation. Yes, Your Honor. If you look at the note that was provided before she came back, before she wrote the letter, it's from her doctor, Dr. Chido, and it stated September 20, 2013. She came back in October. And it simply states she can work a four-hour shift walking and standing based on symptoms. She returned. She sent the letter about NIDRRS. She returned. There's nothing in the letter that says she can't perform the station officer position. She didn't inform anyone when she returned in October that she was unable to perform the duties of the station officer position. She's been doing that job for four years. She hasn't had an issue with it. She's able to perform the job. And then when she was reevaluated in February about four months after her return, Dr. Willink in the IME that was set up by Plaintiff's Counsel stated, I feel she is currently able to do her station officer duties. There's no question she can and has been performing the light duty position of station officer. So she is not a handicapped individual who is qualified under the statutes. She has been granted multiple reasonable accommodations. The town is not required to give her the accommodation of her choosing or the ideal accommodation, just a reasonable accommodation, and they've done that. She's been able to work for the last four years. I don't know if you'd like me to address the gender discrimination issue. If you could just briefly. So there is my understanding is that it's based on the denial of the request to perform NIDRRS tasks rather than working the station officer position. And again, there have been 40 individuals who have worked on light duty. Thirty-nine of them have been male. They have all worked in the station officer position with the one exception of Officer Ben Dexter, who in the facts of it, I won't belabor it, but essentially there was a records sergeant who was in charge of performing, not necessarily performing, but overseeing the NIDRRS work. He was retiring. A detective took over and was being assisted by a civilian clerk. And the plaintiff went out sick pending her June surgery. She went out sick in April of 2013 and took about two months off prior to her surgery. During that time period, it was determined the detective was retiring, so they needed someone basically to train to figure out how to do the NIDRRS work. So they did bring in a male police officer who was also on light duty and did have him perform these NIDRRS tasks for about four months. And then once they were sufficiently caught up, they returned him to the station officer desk, just like they do with every other male or female police officer on light duty. And he stayed there until he returned to active duty. After he went back, after the department was caught up on the NIDRRS, which is what required them to bring him in and do it for a four-month period, that's when the plaintiff sent a letter asking to be able to perform the NIDRRS work. And at that point, the department was sufficiently caught up and that other employee who was doing that work on a part-time basis had already been sent back. So that position was not open. Well, I shouldn't say it's not a position. It was just separate tasks rather than the station officer tasks that were being performed. So at that point, the need for those tasks was no longer present, and that male officer had been returned to the station officer position, the same position that the plaintiff returned to when she returned from her leave. And so I guess what's being requested is either to create and form a new clerical position to be formed by a police officer rather than a civilian clerk, and the department has no duty to do that. It was a reasonable combination. Or essentially to promote her to the position of record sergeant. She's not a sergeant, and the sergeant is the person who oversees that program. And I think we discussed – actually, I will address any questions you have, but I think that addresses the two major handicap and discrimination claims. Thank you.